UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-547-GWU

DAVID L. NAPIER, PLAINTIFF,

VS.   **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

  4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

  5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

  6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

  7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

  Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

06-531 Napier

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

06-531 Napier

pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

06-531  Napier

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

06-531  Napier

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." <u>Abbott v. Sullivan</u>, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  <u>Ibid</u>.  In such cases, the agency may be required to consult a vocational specialist.  <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, David L. Napier, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc disease of the lumbar spine with lumbar radiculopathy, a depressive disorder, an anxiety disorder, and a pain disorder associated with psychological factors. (Tr. 15). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Napier retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 16-20). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE a series of hypothetical questions which included a limitation to "light" level exertion, and also had the following non-exertional restrictions consistent with the finding in the administrative decision. (Tr. 282). He: (1) could not be exposed to vibrating machinery or hazards; (2) could occasionally climb ladders, ropes, and scaffolds, balance, stoop, kneel, crouch, and crawl; (3) would have a "severely limited but not precluded" ability to maintain attention and concentration; and (4) would have a limited but satisfactory ability to relate to coworkers, deal with the public, deal with work stresses and understand simple one- or two-step instructions. (Tr. 283-5). The VE responded

that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Id.).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Napier alleged disability due to nerves, arthritis, and a "back problem" (Tr. 59), which he testified consisted of a bone spur in his neck that prevented him from lifting his hand above his head and degenerative disc disease which caused severe low back pain and leg numbness, as well as knee problems which caused him to fall frequently (Tr. 271-2). He described poor sleep due to pain which was not relieved by his medications. (Tr. 275-6). Other problems included frequent urination, hypertension, a history of kidney problems, and a history of surgery for a ruptured testicle. (Tr. 275, 277, 280). He had once attempted suicide prior to his alleged onset date, due to lack of sleep and an inability to pay his bills. (Tr. 281).

The plaintiff submitted evidence from a neurosurgeon, Dr. Richard Lingreen, who treated him in 2005 and apparently obtained a cervical MRI showing spurring at C5-C6 and only "mild" degenerative disc disease of the lumbar spine. (Tr. 189). Dr. Lingreen's initial physical examination showed normal sensation and reflexes, no tenderness, spasm, or reduced range of motion, and negative straight leg raising. (Tr. 127). At the last reported visit to Dr. Lingreen, in September, 2005, the physician noted that Mr. Napier's functioning and activities of daily living were stable

and being improved. (Tr. 188). He increased the plaintiff's pain medication dosage, but did not suggest any functional restrictions. (Id.).

Testing by other sources in May, 2005 included a lumbosacral spine x-ray showing "minimal" narrowing of the disc spaces and end plate changes (Tr. 185) and a spur of the left foot (Tr. 218). Although the plaintiff was admitted to Manchester Memorial Hospital at this time, complaining of extreme back pain, as well as rheumatoid arthritis, the physician suspected drug-seeking behavior and the plaintiff left the hospital described as being "in very good general condition" overall. (Tr. 191-2).

The only examining physician to suggest functional limitations was Dr. Joseph Koenigsmark, who evaluated Mr. Napier in January, 2005. Mr. Napier stated that his back problem had started when he was 19 years old. A physical examination showed him to be in "moderate" distress with walking and there was palpable tenderness in the lower lumbar area with spasms at L3-L5. (Tr. 120-1). His gait was somewhat antalgic due to pain in the right leg, and he had to use a table to get back up after doing a knee squat. (Tr. 121). There was normal strength, a good grip, fine manipulation, and dexterity. (Id.). He did not appear to have any changes in sensation. Dr. Koenigsmark concluded that the radicular pain going into Mr. Napier's right leg suggested nerve impingement and recommended that records such as

06-531  Napier

MRIs and pain treatment notes be obtained. (Id.).[1]  He limited the plaintiff's ability to lift, carry, and move "heavy" objects, but was not more specific. (Id.).

The ALJ's functional restrictions are consistent with the conclusions of a state agency physician, Dr. Timothy Gregg, who reviewed the record on July 20, 2005. (Tr. 151-8). The plaintiff suggests on appeal that another state agency physician had limited him to "never" climbing ladders, ropes and scaffolds, but this source is not clearly identified as an acceptable medical source under 20 C.F.R. Section 416.913. (Tr. 143-50). In any case, the ALJ could reasonably have chosen to rely on the later opinion of Dr. Gregg, another reviewing source.

The plaintiff's primary argument on appeal is that he had a greater limitation in his ability to focus and sustain attention than was specified in the hypothetical question. The only psychological evidence comes from a one-time examiner, Dr. Pamela Starkey. (Tr. 134). Although she found Mr. Napier to be "slightly dysphoric," he did not demonstrate the depressive and pain symptoms which he described and Dr. Starkey felt that he was more animated than the typical claimant. (Tr. 135). Although Mr. Napier had "moderate difficulty" focusing and sustaining attention at times, he was able to recall his previous day's activity, perform calculations, and recall three objects after five minutes. (Tr. 135-6). Dr. Starkey made a "provisional" diagnosis of a depressive disorder, along with an anxiety disorder, "rule out" social

---

[1] Nerve impingement was apparently not confirmed by the subsequent MRI, according to Dr. Lingreen's notes.

phobia, a pain disorder associated with psychological factors and a general medical condition, and "rule out" attention deficit hyperactivity disorder. (Tr. 140). She assigned a Global Assessment of Functioning score of 57 (Id.), reflecting "moderate" symptoms per the Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision) (DSM-IV-TR), p. 34. In terms of specific restrictions, she felt that the plaintiff would have "mild" difficulty understanding and remembering one- or two-step instructions and relating to people and "mild to moderate" difficulty sustaining attention and pace and dealing with the normal pressures found in day-to-day work settings. (Tr. 141).

A state agency psychologist, Dr. Jane F. Brake, prepared a mental residual functional capacity form indicating that the plaintiff would have "moderate" limitations in a number of areas. (Tr. 160-2).

The plaintiff argues on appeal that the hypothetical question erroneously chose the least favorable terms to describe the plaintiff's mental limitations. Specifically, he implies that it was incorrect for the ALJ to specify a "severely limited but not precluded" ability to maintain attention and concentration rather than a "mild to moderate" limitation as suggested by Dr. Starkey. The court does not see any significant inconsistency in these terms under the facts in this particular case. It would even appear that the ALJ's reference to a restriction somewhere between "severe" and "limited but satisfactory" was greater than the "mild to moderate" limitations given by the examining source. Additionally, the ALJ provided the VE with

06-531 Napier

the specific limitations from Dr. Starkey's narrative report (Tr. 287), and while the VE indicated that an individual would be under a substantial handicap if he had a limitation that would interfere with his ability to reach the employer's requirements for quality or accuracy of work or interfere with production expectations or requirements (Tr. 287-8), the VE did not testify that a "moderate" limitation would preclude the jobs he had previously named.[2]

The court concludes that the administrative decision is supported by substantial evidence, and it will be affirmed.

This the 21st day of September, 2007.

Signed By:

G. Wix Unthank

United States Senior Judge

---

[2] The ALJ thereupon stated that he was considering the term "mild" to be "not significantly limited or limited but satisfactory," and that he considered the term "moderate" to be equivalent to "severely limited but not precluded." (Tr. 288). Counsel for the plaintiff responded that he understood. (Tr. 289). While the court would not rely upon this general statement as necessarily assenting to the ALJ's definitions, it does show that the plaintiff was given an opportunity to address the issue in more depth at the hearing if he desired to do so. Ultimately, there simply is no clear inconsistency between the terms as used in this particular case that would operate to the detriment of the plaintiff.

12